[No. 29799.   Department One.   July 8, 1946.]

*In the Matter of the Estate of* MARY J. MCGILLIGAN,
*Deceased.*

WENDEL F. JAHN, *Individually and as Executor, Respondent,*
v. PETER J. MCGILLIGAN, *Individually and as Executor,*
*Appellant.*[1]

*C. E. H. Maloy* and *E. P. Whiting,* for appellant.
*John D. Carmody* and *W. H. Cook,* for respondent.

[1]Reported in 170 P. (2d) 661.

MILLARD, J.—Mary Jahn McGilligan died October 12, 1944, in the city of Seattle, leaving surviving her her husband, Captain Peter J. McGilligan, who at the time of his wife's death was overseas in the United States naval service, and three brothers, viz., Harry F. Jahn, Wendel F. Jahn, and Nicholas F. Jahn. By her last will and testament, executed September 28, 1937, she devised to her brother Wendel F. Jahn certain real property in Seattle and devised and bequeathed the residue of her estate to her husband, whom she nominated executor without bond and with full powers. This will was admitted to probate in the superior court for King county October 31, 1944, and Peter J. McGilligan qualified as executor of the estate of his deceased wife.

Mrs. McGilligan, during her last illness and while confined in Providence hospital (she was there from April 22, 1944, until May 20, 1944), on May 6, 1944, executed another will by which she gave to her husband one dollar, to her brother Harry F. Jahn one dollar, to her brother Nicholas F. Jahn the real property in Seattle which she had devised to her brother Wendel F. Jahn by her will executed September 28, 1937, to her brother Wendel F. Jahn her home property on north Seventy-seventh street in Seattle, to the wife of the last-named brother a fur coat, and the residue of her estate to her two brothers (Wendel F. Jahn and Nicholas F. Jahn), share and share alike. The testatrix named her brother Wendel F. Jahn as executor of the estate with full nonintervention powers.

The record does not disclose the age of the testatrix. She and Peter J. McGilligan intermarried in 1933. Shortly thereafter Mrs. McGilligan suffered what Captain McGilligan denominates cerebral thrombosis; at any rate, Mrs. McGilligan was never in good health thereafter. For ten years prior to her death, she was a patient of a prominent Seattle physician, who defined her ailment as rheumatic heart disease, plus high blood pressure. During the decade she was under the care of this physician, the testatrix had periods when, because of overexertion, her heart would bother her and it would become necessary to hospitalize her until she had recuperated. She was thus hospitalized about six times.

In 1943, Mrs. McGilligan commenced an action for a divorce against her husband, which action was dismissed about the time he went into the United States navy in June, 1943. From that time until the death of the testatrix, her husband was absent from Seattle.

While in the hospital between April 22, 1944, and May 20, 1944, Mrs. McGilligan requested her brother Wendel F. Jahn to bring to her, from a desk in her home, certain papers. Among these papers delivered by Mr. Jahn to his sister at that time was a sealed envelope marked "Last Will and Testament of Mary Jahn McGilligan." Mrs. McGilligan requested her brother to take the paper to a lawyer and have a will drawn in which should be embodied the provisions contained in that paper. Wendel F. Jahn took the paper to W. H. Cook, a Seattle attorney who had previously represented Wendel F. Jahn, and left it with Mr. Cook, together with his sister's instructions. This attorney advised the brother to return to his sister and call her attention, among other things, to statements in the paper derogatory to her husband. Mrs. McGilligan, on receipt of this information, directed her brother to have Mr. Cook prepare a "legal will." With the paper as a guide, Mr. Cook drafted the will executed by Mrs. McGilligan May 6, 1944.

Mr. Wendel F. Jahn delivered the will drafted by Mr. Cook to Mrs. McGilligan at Providence hospital. The brother was not present when this will was executed by Mrs. McGilligan, who read the will in the presence of her brother, said it was satisfactory and that she would need witnesses to it. The brother left his sister's hospital room and on his way out of the hospital informed a Sister on the floor that Mrs. McGilligan wanted witnesses. Wendel F. Jahn did not again see that will, nor did he know what disposition had been made of it until the day of his sister's funeral the following October.

The only persons present at the time of the execution of this will were the testatrix and two graduate nurses, who saw the testatrix daily during the time from April to May she was in the hospital. In the opinion of both nurses, who signed the will as witnesses at the request of Mrs. McGilli-

gan, the testatrix was of sound mind at the time the will was executed. Mrs. McGilligan inquired, when the two nurses came into her room at her request, whether they "would do a favor for her." She exhibited the will to them, declared it to be her will, and even asked the two witnesses whether they desired to read the will.

The physician who attended the testatrix for more than a decade saw her each day while she was in the hospital. He was of the opinion that the testatrix was of sound mind at the time she executed this last will, and that, while she was a sick woman physically, she was able to do whatever she chose to do from a mental standpoint.

This proceeding was instituted by Wendel F. Jahn for revocation of the probate of the will executed September 28, 1937, and to establish the will executed May 6, 1944, as the last will and testament of Mrs. McGilligan. Peter J. McGilligan answered individually and as executor under the will executed September 28, 1937, and affirmatively alleged that the will executed May 6, 1944, was procured by Wendel F. Jahn and another brother of the testatrix by the exercise of undue influence upon their sister at a time when she was sick mentally and physically.

. On the ground that Mrs. McGilligan had sufficient mental capacity at the time she executed the second will in question, the court entered a decree revoking probate of the will of September 28, 1937, and admitting to probate the will of May 6, 1944. Peter J. McGilligan appeals from that decree.

Counsel for appellant contends that respondent beneficiary actively participated in the preparation of the will executed in 1944, and that there was such fiduciary relationship between the testatrix and respondent beneficiary as will raise a presumption of undue influence exercised by respondent upon his sister at a time when she was sick mentally and physically.

Twelve days prior to the admission of Mrs. McGilligan into the hospital April 22, 1944, and twenty-six days prior to the time she executed her last will and testament May 6,

1944, the testatrix prepared, or had prepared, a typewritten statement dated April 10, 1944, and signed by the testatrix. This paper is entitled "Last Will and Testament of Mary Jahn McGilligan." While there is no doubt that the testatrix signed this paper, it fairly appears that the names of the two witnesses to the instrument were not written by the persons named. The two persons named as witnesses were next door neighbors of testatrix, who had them in mind as witnesses to a will, which is established by the fact that she requested them at one time whether they would act as witnesses to her last will and testament. Respondent never knew nor was he aware of the existence of the paper until, at the request of his sister, he brought it from her home to the hospital in a sealed envelope and she there exhibited it to him.

Doubtless, the testatrix knew that the paper was not a valid will, inasmuch as she instructed her brother to take that paper to a lawyer "and have him draw a legal will." The lawyer, when the paper was presented to him, advised the brother of testatrix that the validity of the instrument was doubtful by reason of the corrections that had been made in it and other matters. The lawyer also suggested deletion of the statements concerning appellant. The testatrix, when her brother informed her of the attorney's advice, again instructed her brother to go to the same lawyer and have him prepare a will as outlined in the paper entitled "Last Will and Testament of Mary Jahn McGilligan," signed by the testatrix and dated April 10, 1944.

Respondent never suggested to his sister what the contents of her will should be, nor is there any evidence that he ever acted for or advised his sister in the conduct of any of her business affairs. The will executed by the testatrix May 6, 1944, makes the same disposition of the property of the testatrix as outlined by her in the paper the validity of which is challenged by appellant, except her brother Harry F. Jahn is not mentioned in the typewritten paper but is bequeathed one dollar in her last will and testament.

■ There is no evidence of any fiduciary or trust relationship between the testatrix and respondent which would raise a presumption of undue influence exercised by respondent upon the testatrix. Nothing is shown other than the normal relation of brother and sister. The testatrix never reposed any special confidence in her brother, nor did he ever accept any trust on her behalf. Respondent was nothing more than the messenger of his sister in delivering to the attorney a paper from which the attorney obtained the information for preparation of the last will and testament of the testatrix. The contents of the will were not dictated by respondent. As stated above, the testatrix, without suggestion from her brother and without his knowledge, had already reduced to writing instructions respecting the disposition of her property. There is no merit in the contention that the last will and testament executed May 6, 1944, was the result of undue influence on the part of respondent, who was a beneficiary under the will, which prevented the testatrix from the exercise of judgment and choice.

It is true that, in 1937, the testatrix by her will devised and bequeathed the bulk of her estate to appellant, but even then respondent was a beneficiary under that will. In the ensuing years, there were marital difficulties between the testatrix and appellant, as is evidenced by her action for divorce in 1943.

■ We are committed to the rule that to vitiate a will there must be more than influence. It must be undue influence at the time of the testamentary act which interfered with the free will of the testatrix and prevented the exercise of judgment and choice. *In re Larsen's Estate,* 191 Wash. 257, 71 P. (2d) 47; *In re Schafer's Estate,* 8 Wn. (2d) 517, 113 P. (2d) 41; *In re Bottger's Estate,* 14 Wn. (2d) 676, 129 P. (2d) 518.

Mrs. McGilligan exercised the right, which was hers, to dispose of her property as she wished. Whatever her motive in refusing to give anything to appellant, the testatrix had testamentary capacity at the time of the execution of her last will and testament. There is no showing of undue in-

fluence by respondent which interfered with the free will of the testatrix and prevented the exercise of judgment by her at the time she executed her last will and testament May 6, 1944.

The decree is affirmed.

BEALS, C. J., STEINERT, SIMPSON, and MALLERY, JJ., concur.